**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Tamera S.,[1]

               Plaintiff,

      v.

Frank Bisignano,
*Commissioner of Social Security*,

               Defendant.

Case No.  25-cv-119 (NEB/SGE)

**REPORT AND RECOMMENDATION**

---

This matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). Plaintiff, Tamera S. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for Disability Insurance Benefits under Title II of the Social Security Act. The Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern an action seeking judicial review of a decision of the Commissioner of Social Security, the present action should be "presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief requesting reversal of the Commissioner's final decision and an award of benefits or, in the alternative, a remand to the Social Security Administration for further administrative proceedings. (Dkt. 9).[2]

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Thus, when the Court refers to Plaintiff by her name only her first name and last initial are provided.

For the reasons discussed herein, this Court recommends Plaintiff's request for relief (Dkt. 9) be **GRANTED in part** and **DENIED in part**, and Defendant's request for relief (Dkt. 10), be **DENIED**.

## I.   BACKGROUND

Plaintiff applied for Disability Insurance Benefits on February 23, 2022, alleging disability as of December 31, 2021, due to bipolar, anxiety, and depression disorders. (*See* Tr. 1838-42.)[3] Her claim was denied initially and upon reconsideration. (Tr. 1745-48, 1751-54.) On August 16, 2022, Plaintiff filed a written request for a hearing before an Administrative Law Judge (ALJ), and a telephonic hearing was held on August 2, 2023. (Tr. 1755-56, 1701-15.) At the hearing, Plaintiff was represented by counsel and testified. Medical expert Emily Thomas, Psy.D., and vocational expert Jason Ogren were not present, did not testify, and instead responded to form interrogatories after the hearing. (Tr. 1995-99, 2935-43.) On December 21, 2023, the ALJ issued his decision finding that the Plaintiff was not disabled. (Tr. 15-28.)

Plaintiff requested review of the ALJ's decision and submitted additional medical records from the Mayo Clinic from May 8, 2023, through December 19, 2023, related to her attempted Electroconvulsive Therapy (ECT) to the Appeals Council for review. (Tr. 34-1700, 1835-37.) The Appeals Council denied Plaintiff's request for review on November 19, 2024, stating it would *not* include the new medical records as evidence because "[the] evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2.) Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-6.)

## II.   STANDARD OF REVIEW

---

[3] Throughout this Order, the Court refers to the Administrative Record, (Dkt. 7), by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of each page of the record.

2

### A. Administrative Law Judge's Analysis

The Court's review of the Commissioner's final decision is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). This "threshold . . . is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th 2001)).

### B. Appeals Council Review

If the claimant is dissatisfied with the administrative law judge's decision, the claimant may request review by the Appeals Council, although the Appeals Council is not required to grant that request for review. *See* 20 C.F.R. §§ 404.967–404.982. If not available to the ALJ, the Appeals Council must review additional evidence that is new and material where it relates to the period on or before the date of the administrative law judge hearing decision is issued, and there is a reasonable probability that the additional evidence would change the outcome of the decision. *See Bergmann v. Apfel*, 207 F.3d 1065 (8th Cir. 2000) (citing 20 C.F.R. § 404.970(b)). The evidence must be "new" and not merely cumulative of other evidence on the record, and it must be "material" to the claimant's condition for the time period for which benefits were denied. *William v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir. 1990). In reviewing the additional evidence, the Appeals

Council shall evaluate the entire record including the new and material evidence submitted. *Bergmann*, 207 F.3d at 1069.

### C.  Judicial Review

If a claimant is dissatisfied with the final decision of the Commissioner following the request for review to the Appeals Council, the claimant may seek judicial review in federal district court. In cases where there has been a submission of supplemental evidence following the ALJ's decision, the record before the district court includes that evidence submitted after the hearing and considered by the Appeals Council. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)).

> Once it is clear that the Appeals Council has considered newly submitted evidence, [the reviewing court does not] evaluate the Appeals Council's decision to deny review … [i]nstead [review] is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.
> …
> Of necessity, that means [a reviewing court] must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing.

*Riley*, 18 F.3d at 622 (citing *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)).

Here, the reviewing court must consider the medical records (1143 pages) submitted to the Appeals Council and covering the treatment of the Plaintiff from May 8, 2023, to December 19, 2023, and how the ALJ would have weighed these medical records in making a final ruling. (Tr. 2.) In doing so, the reviewing court must determine if, despite the reports, the ALJ's decision is still supported by substantial evidence in the record as a whole. The submission of additional evidence to the Appeals Council slightly complicates the "substantial evidence" analysis. In reviewing the record for substantial evidence, the court "looks at both evidence that supports and evidence that detracts from the Commissioner's decision," *Bergmann*, 207 F.3d at 1068 (citing

4

*Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998)), and then "factor[s] in" the new evidence to determine whether the ALJ's decision is still supported by substantial evidence. *Flynn v. Chater*, 107 F.3d 617, 621-22 (8th Cir. 1997).

**III. DISCUSSION**

An individual is "disabled" under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine the existence and extent of a claimant's disability, the administrative law judge must follow a five-step sequential analysis. This analysis requires the administrative law judge to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).[4]

In reaching his decision here, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 31, 2021. (Tr. 20.) At step two, the ALJ found Plaintiff had the following severe impairments: bipolar disorder, depressive disorder, and anxiety disorder. (Tr. 21.) At step three, the ALJ

---

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least twelve continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's residual functional capacity, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work, considering their Residual Functional Capacity, age, education, and work experience. 20 C.F.R.§ 416.920(a)(4)(i–v); 20 C.F.R. § 404.1520(a)(4)(i-v).

concluded none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments"). 20 C.F.R. § 416.920(a)(4)(iii).[5] (Tr. 21.)

Specifically, at step three, the ALJ reviewed the criteria for the listings 12.04 and 12.06 (Mental Disorders) and considered whether Plaintiff's mental impairments satisfied the "paragraph B" criteria. (Tr. 21.) "These criteria represent the areas of mental functioning a person uses in a work setting …[and] determine the degree to which [a] medically determinable mental impairment affects the four areas of mental functioning and [the] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. 404, Subpart P App'x 1, 12.00 (A)(2)(b) (citing 20 CFR §§ 404.1520a(c)(2) and 416.920a(c)(2).) To satisfy the "paragraph B" criteria, the mental impairments of the Plaintiff must result in one *extreme* limitation or two *marked* limitations in a broad area of functioning to meet or medically equal a listed impairment. *Id*.

In this case, the Disability Determination Service (DDS) psychological consultants assessed the Plaintiff's limitations on June 28, 2022, and August, 7, 2022, under the "paragraph B" criteria and found that she had a *mild* limitation in the area of "understand, remember, or apply information;" a *moderate* limitation in the area of "interact with others;" a *moderate* limitation with "concentrate, persist, or maintain pace;" and a *mild* limitation in the area of adapt or manage oneself." (Tr. 22, 1725- 32 (emphasis added).) Based on the records they had as of August 7, 2022, the DDS assessed her limitations and vocational factors and decided Plaintiff was not disabled. (Tr. 1741.) It appears, however that the DDS consultants did not have any evidence of record after August 4, 2022, and were unable to review the medical records of the Plaintiff's worsening medical

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

condition over the following twelve months and her ECT treatments through July 31, 2023. Dr. Emily Thomas, the Defendant's medical expert, found similar limitations in functioning in the check-the-box form and interrogatories filled out by her. (Tr. 22, 2935-43.) While the ALJ found the DDS assessment and Dr. Thomas' opinion largely persuasive and supported by the record, the ALJ deviated from their opinions and, "in considering the overall record, including the evidence of further mental health treatment with ECT therapy," found the Plaintiff to have a *moderate* limitation in adapting or managing oneself. (Tr. 22.)

Like the consultants, the ALJ found the Plaintiff to have a *moderate* limitation in interacting with others. The ALJ balanced Plaintiff's reported difficulty getting along with others, anxiety in social situations, her worry others are looking at her and making judgements, and the anxiety she feels making it difficult to communicate in those situations on one side, and the maintenance of a relationship with her fiancé, her ability to relate appropriately with providers, her therapists observations that she has normal speech and good eye-contact at visits despite presenting as anxious and tearful at times, and her psychiatric provider's description of the claimant as cooperative on the other. (Tr. 22.) Ultimately, the ALJ found, because the Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied and the Plaintiff's impairments are not severe enough to equal a listed impairment under appendix 1 to subpart P of part 404, and the analysis must continue.

At step four, the ALJ determined Plaintiff's residual functional capacity (RFC), explaining that his "assessment reflects the degree of limitation [he] found in the 'paragraph B' mental function analysis." (Tr. 23.) The ALJ found that although she could work, the Plaintiff could not perform her past relevant work as a home health aide. (Tr. 26-27.) Instead, the ALJ found:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) but with the following nonexertional limitations: no exposure to dangers to life or limb in the workplace; no exposure to vibrating objects or surfaces in completing tasks and not required to work in high, exposed places; no work in excess of simple, routine, repetitive tasks; occasional changes in work setting; no public interaction; brief and superficial interaction with supervisors and coworkers; … no complex decision making; and no rapid, assembly-line paced work (daily quotas by not hourly quotas).

(Tr. 23.) In making this finding, the ALJ weighed the evidence, including the testimony of the Plaintiff and her claimed inability to engage in work activity as a result of the limitations she experiences with bipolar disorder, the progression of her bipolar disorder since 2019, and her many trials of different medications with negative side effects *against* the evidence that her bipolar disorder has been managed with medication, psychotherapy, "and more recently, with ECT treatment," finding "[t]he course of treatment has resulted in improvement." (Tr. 24.) In conclusion, the ALJ found

> Psychotherapy has been helpful, and she has had a positive response to ECT treatment. The limitations in the residual functional capacity accommodate the severe mental impairments indicated by the record.

(Tr. 24.)

Thus, at step five, the ALJ found that Plaintiff could perform work as a "labeler," "garment batter," or "inserter," with a combine 95,000 jobs nationally. (Tr. 27.) The ALJ thus concluded that the Plaintiff was not disabled. (Tr. 28.)

## IV. ANALYSIS

Plaintiff contends that remand is required because (1) the new medical records submitted to the Appeals Council are material and the Appeals Council wrongly concluded that the evidence would not have changed the ALJ's decision, (2) the ALJ erred by giving greater weight to the opinion of Dr. Emily Thomas based on her review of records over the Plaintiff's longstanding

8

treating medical provider, Dr. Ashok Seshardri, and (3) the RFC Assessment is not supported by the weight of the medical evidence. (Dkt. 9.) As such, the Plaintiff asks the Court to reverse the Commissioner's final decision and award benefits, or in the alternative, remand the case for further proceedings before the Commissioner of Social Security. (*Id.*)

Defendant contends that each of Plaintiff's arguments is unavailing, the newly submitted reports did not have a reasonable probability of changing the outcome of the ALJ's decision, and that the ALJ's decision is supported by substantial evidence. (Def.'s Mem. (Dkt. 10).) Defendant asks this Court to affirm the ALJ's decision. (*Id.*)

### A.  The New, Material Evidence Submitted to the Appeals Council

The Appeals Council will only review cases in limited circumstances: (1) if there appears to be an abuse of discretion by the ALJ; (2) if there is an error of law; (3) if the action, finding, or conclusions in the ALJ's decision or dismissal order are not supported by substantial evidence; (4) if there is a broad policy or procedural issue that may affect the general public interest; or (5) if the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision of the ALJ, and "there is a reasonable probability that the additional evidence would change the outcome of the decision."[6] *See* 20 C.F.R. § 404.970(a).

Here, the Appeals Council concluded that there was not "a reasonable probability" that the new evidence would change the outcome of the ALJ's decision. This Court disagrees. This Court, however, does not review the Appeals Council's determination and instead considers the new

---

[6] This additional evidence will only be considered if the Petition is able to show "good cause" for not informing the Commissioner about the evidence as described in § 404.935 because of a variety of reasons, none of which are challenged by the Defendant in this case. *See* 20 C.F.R. § 404.970 (b) and Dkt. 10. Defendant does not challenge Plaintiff's "good cause" for submitting the evidence to the Appeals Council after the hearing with the ALJ and that the records "relate[] to the period on or before the date of the hearing decision of the ALJ."

evidence and the record as a whole when determining if substantial evidence supports the ALJ's decision. *Davidson v. Astrue*, 501 F.3d 987, 990 (2007); *Riley*, 18 F.3d at 622. The new reports are available for the Court's review as part of the administrative record because the Appeals Council considered them when it decided whether to review the ALJ's decision. *See Davidson*, 501 F.3d at 990.

At step three of the disability determination, the ALJ evaluated Plaintiff's mental capabilities using the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments. These areas, known as the "paragraph B" criteria, are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. Part 404, Subpart P, App. 1. In assessing whether Plaintiff had any limitations, the ALJ reviewed the medical record of Plaintiff's severe impairments of bipolar disorder, depressive disorder, and anxiety disorder. In doing so, he considered the positive effect of Plaintiff's newly attempted ECT treatment. In comparing the Plaintiff's impairments with the criteria, the ALJ found that the Plaintiff had a *moderate* limitation in adapting or managing oneself based on "the overall record, including evidence of further mental health treatment with ECT therapy." (Tr. 22.) Similarly, the ALJ found the Plaintiff was only *moderately* limited in adapting or managing oneself based on his finding,

> [h]er mental health symptoms have been managed largely with medication management. Psychotherapy started in August 2022 . . . [she] has been unable to tolerate current medications at higher does, and in June 2023 she was referred for ECT treatment. She had a positive response to ECT therapy, and is continuing to take her medications at previous doses. (Exhibit B8F/6).

(Tr. 23.)

10

In his Residual Functional Capacity (RFC) determination at step five, the ALJ also relied on the Plaintiff's recent ECT treatment, hospitalization from July 1-7, 2023, to undergo treatment, and its effectiveness in controlling Plaintiff's symptoms. (Tr. 22, 23, 24, 25-26). The ALJ recognized,

> As she had not responded to the present medication therapy, and she was unable to tolerate current medications at a higher dose, a referral for ECT was made. Given the need for decreases in the dosages of her current medications to optimize the ECT treatment, she was hospitalized from July 1-7, 2023, while she underwent three ECT treatments. She had improvement in depression and anxiety by the time of discharge, and the plan was to continue the ECT treatment as an outpatient. (Exhibits B8F/79). She had an excellent response to ECT, and the severity of her depressive symptoms had decreased to the milder range. She did report having had a severe panic episode after the fourth treatment, and ways to manage those episodes were discussed. (Exhibit B8F/7-8).

(Tr. 26.) Thus, in steps three and four, the ALJ acknowledged Plaintiff's inability to handle the side effects of various medications but was encouraged by Plaintiff's recent ECT treatments and her seemingly positive response to it.

The new medical records and reports submitted to the Appeals Council track the Plaintiff's ongoing deterioration and her inability to undergo additional ECT treatments because of her worsening anxiety surrounding the treatments and side effects (including memory loss). These worsening symptoms and unsuccessful ECT medical treatments both directly affect Plaintiff's limitations and RFC at steps three and four of the ALJ's sequential analysis. *See above*. At the time the ALJ issued his opinion, he knew that on July 1, 2023, Plaintiff was admitted into the hospital for ECT treatments. At the time of her admission, she expressed,

> suffering with significant depression over the past 17 months with worsening over the last month. She reports that she has tried several medications trials with no minimal improvement. Prior to this episode of depression, she experienced an episode of hypomania . . . . She describes her depression as 'the worst it is ever been.' She endorses amotivation, decreased energy, weight gain of 100 lb., [sic] worthlessness, and feeling

11

> guilty. She is also no longer working and has decreased ADLs including hygiene and laundry. She reports that she was having intrusive thoughts of suicide, but over the past couple of months, her suicidal ideation has become more passive and decreased in intensity. She denies suicidal intent and reports that she "knows I am in the right place" and hopeful for her [ECT] treatment. Her goal for hospitalization is to 'feel more human.'

(Tr. 2526.)  The ALJ also had the medical records from her initial ECT treatments, which seemed to initially help her mental health. But the ALJ did not have the records regarding Plaintiff's attempts at further ECT treatment and her worsening anxiety surrounding the significant side effects of ECT, leading to a complete inability undergo any additional treatments, despite her motivation to do so. (Tr. 80, 151-52, 247, 291.)

This additional evidence[7] undermines the medical evidence before the ALJ at the time the order was issued. It is both new and material as to the Plaintiff's deterioration and her inability to complete ECT treatments, thereby affecting her work limitations and RFC. Accordingly, the record that was before the ALJ has been significantly altered by the additional evidence. The evidence supporting the ALJ's determination is now undermined, and this Court cannot determine that the ALJ's decision is supported by substantial evidence because the ALJ did not have the opportunity to reconcile this conflicting evidence. This Court therefore recommends remand to the Commissioner for its consideration of the new, material evidence of Plaintiff's evolving condition through December 21, 2023.

### B.  The Weight of the Medical Opinions

The Plaintiff next alleges that it was "improper for the ALJ to accord the greatest weight to the opinion of Dr. Thomas over Dr. Seshardri." (Dkt. 9 at 16.) The Defendant argues that the

---

[7] The additional evidence submitted to the Appeals Council may be found in the Transcript at pages 34-1700, but the only relevant reports for this Court's consideration are those up to and through December 21, 2023, the date the ALJ issued their decision. (Tr. 18.)

ALJ properly applied the regulations in weighing the supportability and consistency of the medical opinions. (Dkt. 10 at 9.)

There is no *per se* rule that an ALJ must assign greater weight to an examining physician's opinion than to a non-examining physician's opinion. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (affirming ALJ's decision to give little weight to Plaintiff's examining physicians' opinions and greater weight to non-examining state agency physician's opinion); *Betts v. Colvin*, No. 14-CV-2434 (JJK), 2015 WL 2105855, at *27 (D. Minn. May 6, 2015) (same).

The ALJ determined that Dr. Seshardri's April 18, 2022 opinion on Plaintiff's limitations was not persuasive, as it was not consistent with or supported by "his mental status observations" in the records. (Tr. 26.) Instead, the ALJ found "the DDS assessments and the medical expert's opinion are largely persuasive and supported by the record" and "reflect a careful review of the entire body of medical evidence." (Tr. 22, 26.)

As discussed above, however, Dr. Seshardri's opinions were based on information prior to his April 18, 2022 report, and the DDS consultant's assessments were based on information that did not contain medical records past August 7, 2022. Similarly, Dr. Thomas, the Commissioner's medical expert, gave limited responses to the form interrogatories sent to her by the ALJ and did not include any reference to the ECT therapy records submitted in Exhibit B8F. (Tr. 2935-43).

The record is unclear if Dr. Thomas had all the medical records available when responding to the ALJ's request for her professional opinion. (Tr. 2917.) Following the August 2, 2023 ALJ hearing, the record was left open to allow for the submission of additional medical records from the Mayo Clinic, as Plaintiff's attorney represented that the Plaintiff had received additional treatments since the last record in the case at Exhibit B7F. (Tr. 18.) Thereafter, the additional records were received and entered into the record at Exhibit B8F. (Tr. 2706-916.) An interrogatory

13

was sent to Dr. Thomas, and her response was entered into the record as Exhibit B11F. (Tr. 2935-43.) Dr. Thomas says very little in her responses to the interrogatories and instead generally cites to various exhibits in support of the boxes she checked. (*Id*.) She does not cite the additional records related to Plaintiff's ECT appointments, treatments, and aftercare. (*See* Tr. 2935-43.)

Dr. Thomas determined Plaintiff's limitations to be as follows: Understanding, Remembering, or Applying Information, *Mild*; Interacting with Others, *Moderate;* Concentrating, Persisting or Maintaining Pace, *Moderate*; Adapting or Managing Oneself, *Mild*. (Tr. 2940.) Although the ALJ found Dr. Thomas' opinion largely persuasive and supported by the record, the ALJ deviated from her opinion in one respect: "in considering the overall record, including the evidence of further mental health treatment with ECT therapy," the ALJ found the Plaintiff to have a *moderate* limitation in the area of adapting or managing oneself. (Tr. 22.)

Because this Court recommends remand based on the newly submitted reports provided to the Appeals Council because they undermine the previous evidence relied upon by the ALJ in his decision, and because the Court cannot discern what medical records were reviewed by Dr. Thomas when she responded to the interrogatories, the Court cannot and need not address the supportability and consistency of the medical opinions.

### C. The Residual Functional Capacity Assessment

Plaintiff next contends the RFC finding at step four was not supported by substantial evidence in the medical record. (Dkt. 9 at 16-18.) The Defendant submits that substantial evidence supports the ALJ's finding. (Dkt. 10 at 16-18.)

The ALJ must build a logical bridge between the RFC and the evidence by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material

14

inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

In his analysis at step four, the ALJ included a narrative discussion describing how the evidence supported his conclusions with the evidence he had *at the time*. As Plaintiff's symptoms changed over time, the ALJ had more information than Dr. Seshardri or the DDS consultants in their respective 2022 findings. But the ALJ's narrative relies on the promising ECT treatment and its seeming effectiveness in treating the Plaintiff's severe mental health impairments. In determining Plaintiff's RFC and in reviewing the records, the ALJ noted,

> The claimant presented for a medication management visit on June 19, 2023, reporting a gradual worsening of depressive symptoms over the past month. . . . She was noted to have depressed mood and affect but showed some reactivity. She continued to have intact attention and concentration, intact memory, normal speech, stable rapport, and fair insight and judgment. She expressed interest in ECT therapy. As she had not responded to the present medication therapy, and as she was unable to tolerate current medications at higher doses, a referral for ECT was made. . . . [S]he was hospitalized from July 1-7, 2023, while she underwent three ECT treatments. She had improvement in depression and anxiety by the time of discharge, and the plan was to continue ECT treatments as an outpatient. She had excellent response to ECT, and the severity of her depressive symptoms had decreased to the milder range. She did report having had a severe panic episode after the fourth treatment, and ways to manage those episodes were discusssed.

(Tr. 25-26.) If this were the end of the reports for the relevant timeframe, the Court would conclude that the ALJ's findings were supported by substantial evidence. But the ALJ's assessment of Plaintiff's RFC did not include the medical records from the relevant timeframe submitted to the Appeals Council which, as this Court determines above, undermines the evidence relied upon by

15

the ALJ in his opinion. For these reasons, this Court finds that the ALJ's RFC determination is not supported by substantial evidence and the case should be remanded to the Commissioner for further consideration of the records from the full, relevant timeframe.

## V. RECOMMENDATION

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request for relief (Dkt. 9) be **GRANTED in part** and **DENIED in part**, as set forth above; and

2. Defendant's request for relief (Dkt. 10) be **DENIED**.

Dated:  January 19, 2026                                  *s/Shannon G. Elkins*
                                                          SHANNON G. ELKINS
                                                          United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.